### JOHN A. BURLINGAME
### v.
### WALTER J. HORNE.

*Bailments—Horses—Negligence—Action for Damages.*

The burden is on the bailee of an animal received in good and returned in bad condition, to account for the damage.

[Opinion filed March 13, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. CUTTING, AUSTIN & HIGGINS, for appellant.

The injury complained of is the breeding of one of Dr. Horne's mares to a stallion, while she was in Burlingame's care. It is conceded by all parties that Burlingame was a bailee for

hire, and that the transaction entered into at the request of Horne was for the mutual benefit of the parties. We presume that the measure of Burlingame's duty in the premises will be conceded to be that of an agister, as defined by the courts of Illinois. In the case of Umlauf v. Bassett, 38 Ill. 96, where plaintiff sought to recover the value of a mare and colt which escaped from defendant's pasture, the court says: " Agisters of cattle are only bound to the exercise of ordinary · care, and the record shows` no want of this on the part of Bassett." In the case of Halty v. Markel, 44 Ill. 225, the court says, in speaking of a case where damages are sought for the death of a colt, alleged to have been killed through the negligence of the agister: " Under the contract of bailment, appellant was bound to exercise reasonable care and diligence for the safety of the colt. Story in his treatise on Bailment, Sec. 443, says, it has been decided that agisters of cattle are within the general rule. They do not insure the safety of the cattle agisted, but they are merely responsible for ordinary negligence. That it will be such negligence if an agister or his servants leave open the gates of his ‚fields, and the cattle, in consequence of such neglect, stray away and are stolen, and ·he will be responsible for the loss. This, then, imposed upon appellant the duty of exercising ordinary care, by himself and his servants. If he has failed in this he is liable; if not, then the loss must fall upon appellee."

It is not contended that there was any contract for extraordinary care, although the words " first class" and " excellent" are used by Dr. Horne in detailing conversations with Burlingame. Horne gave directions as to the manner in which the mares were to be treated, and in no respect were his instructions violated.

If special or extraordinary care was desired it should have been contracted for, and any habits or propensities of the animals against which he desired to guard should have been explained to Burlingame. A case exactly in point is Mansfield v. Cole, 61 Ill. 191, where the court says that the agister was " only bound to exercise ordinary care," and adds that as the owner of the horse knew he was " breachy " before put-

ting him to pasture, he should have contracted for special and extraordinary care on that account, if he desired more than the usual attention bestowed upon his animal.

Messrs. CRATTY BROS. & ASHCRAFT, for appellee.

From the record it appears that, in June, 1886, appellee was the owner of a pair of matched mares, worth from $1,200 to $1,500, used by him as a driving team; that appellant was the owner or in possession of a farm near Palatine, Illinois, where he made a specialty of boarding and caring for horses from Chicago, especially gentlemen's road horses; that, on June 16, 1886, appellee, being about to take a trip to Europe for the summer, sent his team to appellant's place to be cared for during his absence, where they remained until September 10th of that year.

The evidence is conclusive, that, while these mares were in appellant's possession, one of them became with foal, and was delivered of a colt July 13, 1887. That by reason of her getting with foal appellee lost the use of the mare for nearly a year, and that breeding her resulted in pulling her down, stopped her growth, etc., so that she does not match the other mare, causing a damage to appellee of at least $400, all of which was disclaimed except $200, for which suit was brought in justice's court, where judgment was rendered against appellant for the full amount, which was affirmed, on appeal, in the Circuit Court. It appears, from the evidence, that appellant was advised of the value of this team before receiving it, and contracted to give it extra care, for which he charged and received a first-class price.

When property is placed in the hands of a bailee, in good condition, and returned in a damaged condition, the law will presume negligence on the part of the latter, and impose upon him the burden of showing that he exercised such care as was required by the bailment. Bennett v. O'Brien, 37 Ill. 250; Cumins v. Wood, 44 Ill. 416; Funkhouser v. Wagner, 62 Ill. 59.

GARY, J. In this case the court is not asked to overrule the doctrine of the Supreme Court in Funkhouser v. Wagner, 62

Ill. 59, that the burden is on the bailee of an animal received in good and returned in bad condition, to show how the change happened, but it is asked to review the evidence and reverse the finding of the Circuit Court upon the facts.

The most favorable view for the appellant of the facts is that he don't know how it happened; but if his conjecture on the matter is correct, he, in that particular, was not in fault.

*Judgment affirmed.*